# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY L. MILLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. 16-640 ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## **OPINION**

Robert C. Mitchell, Magistrate Judge.

Presently pending before this Court is Plaintiff Kelly Miller's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). The parties have submitted cross-motions for summary judgment with briefs in support.[1] Plaintiff argues that the Commissioner's decision was not supported by substantial evidence. For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, Commissioner's Motion for Summary Judgment [ECF No. 16] is GRANTED, Plaintiff's Motion for Summary Judgment [ECF No. 12] is DENIED and the Commissioner's decision is AFFIRMED.

---

[1] In accordance with the provisions of Section 636(c)(1) of Title 28, United States Code, counsel of record voluntarily consented to have a United States Magistrate Judge conduct any and all further proceedings in the case. [ECF Nos. 10, 11].

1

## I. Standard of Review and Applicable Law

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weight[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 35 (3d Cir. 2001)). Nevertheless, "[a]n ALJ must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The ALJ's decision will not be reversed if supported by substantial evidence and decided according to correct legal standards. *Id.* To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. 5 U.S.C. § 706(1)(F).

## B. The Five–Step Disability Test

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. *Jones*, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(h). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. *Id.; Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4) (iii). If so, a disability is conclusively established and the claimant is entitled to benefits. *Jones*, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. *Id.* Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that

the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.' " 20 C.F.R. §§ 404.1520(a)(4)(iii)-(v); *Jones*, 364 F.3d at 503. If so, the claim for benefits must be denied. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir.1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis. *See Podedworny*, 745 F.2d at 221–22.

## II. Background

### A. Procedural History

This case arises out of Plaintiff's March 28, 2013 application for disability insurance benefits and supplemental security income alleging disability since September 1, 2011 due to depression, anxiety, panic attacks, racing thoughts, obsessive compulsive disorder (OCD), paranoia, and hypersomnolence. R. 171, 173, 192. Plaintiff's disability insurance benefits claim was denied initially on May 10, 2013, and at Plaintiff's request, a hearing was held before an ALJ on April 15, 2014. R. 15. Plaintiff, represented by counsel, and a vocational expert testified. R. 26-47. On May 2, 2014 the ALJ issued a decision denying Plaintiff's claim, finding that she was not disabled because she could perform full range of work at all exertional levels

4

with at least six non-exertional limitations to account for her mental limitations. R. 14-22. The Appeals Council denied review on April 4, 2016. R. 2. Having exhausted her administrative remedies, Plaintiff then timely filed this action on May 18, 2016. [ECF No. 1-1].

**B. Factual Background**

**1. Plaintiff's Work History**

Plaintiff was 47 years old on the date of the ALJ's decision, and thus was a younger individual under the regulations. R. 171. She has a high school education and is able to communicate in English, and has past relevant work as a babysitter. R. 21, 194. She was last employed and has not worked since September 2011. R. 30.

**2. Plaintiff's History of Physical Impairments**

a. Plaintiff's Testimony

Plaintiff testified as follows. She has OCD and obsesses about her wrinkles for five hours a day, and that three weeks before the hearing, she also started to check her stove to make sure it was turned off. R. 33, 38-39. She has anxiety, is unable to go to the grocery store, and does not like to be around people. R. 41. Plaintiff sees Dr. Last for medication management every three to six months, but she has no side effects from her medications R. 31, 42.

Plaintiff lives with her teenage son, two dogs, and rabbit. R. 218. She regularly spends time with her boyfriend and family. R. 33. Although she can drive, she does not drive often. R. 33. She visits her parents two blocks up the road three times a week for at least three hours each visit. R. 33. She and her boyfriend go out drinking one to three times a month and they sing karaoke at a club every three months. R. 34-35. At home she reads, cleans, gardens, does laundry, washes dishes, and her boyfriend helps her with the cooking. She does not smoke. R 36-37. Plaintiff exercises on a treadmill four times a week, can go out alone, and tends to her

own personal needs. R. 36-37, 219. She obsesses about her wrinkles about five hours a day, if not by looking in the mirror then going over it again and again in her mind. R 38-39. She is afraid of driving on the highway and gets anxious in crowded stores, but she has no problems being around groups of friends and acquaintances. R. 42, 220.

b. Medical Evidence

At the outset we note that the only hospitalization in the record occurred from December 1, 2004 to December 7, 2004, when Plaintiff was a patient at Westmoreland Regional Hospital. R. 236-254. At that point she was 37 years old and reported she was being treated by Dr. Last since 1999; she complained of obsessive thoughts, worrying about getting old and developing wrinkles causing her anxiety, shakiness, sweating of her hands, hearing voices, having racing thoughts, feeling overwhelmed, decreased sleep, weight loss and lack of interest in activities. She also reported a history of hospitalization in 1992 at the age of 16 due to a suicide attempt after breaking up with her boyfriend. R. 241. On discharge she was diagnosed with obsessive compulsive disorder, major depressive disorder, and panic disorder, and was discharged with instructions to see Dr. Last and her therapist. R. 237. She was oriented to time, place, person, name and situation, was alert and cooperative, had fair insight, good judgment, and intact reality testing. R. 236. She was taking the following medications at discharge: Propanolol (to treat heart rate and sweating), Seroquel, Topamax, Zoloft, Ambian as needed, and Lorazepam as needed for anxiety. R. 236.

1. Joel Last, M.D.

The record evidence of Plaintiff's treatment by Joel Last, M.D. is as follows. During a medication management visit with Dr. Last in September 24, 2009, Plaintiff was "stable" but under stress due to financial issues. R. 266. She was taking Anafranil, Luvox, Remeron,

6

Topomax, Ativan, and Seroquel. R. 266. Dr. Last indicated that she exhibited no suicidality or psychosis, no changes were made to her medications, and he advised her to follow up in three months. Plaintiff did not return until April 2010, when she reported that Remeron helped with her sleep and mood. R. 267. Her current medications were Ativan, Luvox, Topomax, and Anafranil. R. 267. An examination was the same, and Dr. Last requested that she follow up in four months. R. 267.

More than a year later, in May 5, 2011, Plaintiff returned. She reported fewer OCD symptoms and being stable on medications. R. 268. An examination confirmed this, and she was advised to follow up in six months. Her medications remained the same. R. 268.

Plaintiff did not return until November 2012. She reported that she was unemployed, "job seeking," and frustrated at times. Dr. Last noted that she exhibited no suicidality or psychosis, he did not change her medications or diagnosis, and requested a follow up in three months. R. 269.

Plaintiff was again seen by Dr. Last on April 1, 2013, and reported poor focus, an inability to hold down a job, OCD issues, and indicated that she was applying for social security benefits. R. 270. Dr. Last conducted a mental status examination noting normal appearance, good grooming, good eye contact, normal speech, fine mood, appropriate and full range of affect, coherent and goal-directed thought process, grossly intact cognition, and no hallucinations, delusions, or obsessive thoughts. R. 270. Again, she showed no psychosis or suicidality, Dr. Last did not change her diagnosis or medications, and advised follow up in four months. R. 270.

In his medical source statement dated April 11, 2013 Dr. Last explained he had seen Plaintiff for medication management checks every three months. R. 273. He also indicated that

7

Plaintiff had poor focus and concentration, and that her ability to work would be affected by her obsessive thoughts and compulsive behaviors. R. 274. His AXIS I diagnoses were obsessive compulsive disorder, generalized anxiety disorder, and major depressive disorder. R 272. Dr. Last indicated that Plaintiff had poor or none ability to: carry out very short and simple instructions; sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, deal with normal work stress, and understand and remember detailed instructions. R. 275-76. He thought she would not be able to manage benefits in her own interest, and that she would experience difficulty working eight hours a day for forty hours a week. R. 277.

Dr. Last saw her again five months later, on August 29, 2013. A mental status exam was benign and identical to the April 11, 2013 examination. R. 301.

On November 21, 2013, Dr. Last indicated that Plaintiff exhibited no suicidality or psychosis. R. 291. A mental examination revealed good grooming, good eye contact, normal speech, fine mood, appropriate and full range of affect, coherent and goal-directed thought process, grossly intact cognition, and normal thought content without hallucinations, delusions, or obsessive thoughts. R. 291. Dr. Last noted that Plaintiff had some anxiety symptoms due to worries about her sick mother. R. 291. He advised that she follow-up in three months. R. 291.

On January 30, 2014 Plaintiff returned to Dr. Last. A mental status examination at that time was entirely normal and identical to the November 2013 exam. R. 292.

On April 3, 2014 Dr. Last completed a second medical source statement and indicated that Plaintiff had poor focus and concentration, would be absent from work more than three

8

times a month, and that she was "unable to employ since 2010." R. 297. He indicated she had "poor to none" as to mental abilities and aptitude needed to do unskilled work in nearly every category, and "fair" as to two subcategories: ability to sustain an ordinary routine without special supervision, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. R. 298-99. He further reported she had "poor to no ability" in the category "Mental abilities and aptitude needed to do semiskilled and skilled work" in two areas: understanding and remembering detailed instructions and dealing with stress. R. 299. He marked her ability as "fair" in two subcategories: maintaining social appropriate behavior and ability to set realistic goals or make plans independently of others. R. 299. He indicated she had "good" ability to maintain social appropriate behavior and ability to adhere to basic standard of neatness and cleanliness, with a "fair" ability to interact appropriately with the general public. R. 299. Dr. Last indicated that Plaintiff would be able to manage benefits in her best interest. R. 300.

2. Margorie Edgar, LCSW

On March 11, 2013 Plaintiff was seen by licensed clinical social worker Margorie Edgar of Kleinbrook Psychological Services. Ms. Edgar indicated that Plaintiff had a history of depression and OCD since adolescence, but that her OCD symptoms were generally controlled and that she had no "anger issues." R. 258. Ms. Edgar assessed Plaintiff with a global assessment of functioning (GAF) score of 60 and diagnosed her with major depressive disorder. R. 264. A mental status examination revealed normal speech, depressed mood, flat affect, linear thoughts, organized thought content, good judgment, insight, attention, and concentration, and a fair memory. R. 264. In April and May 2013, Ms. Edgar's progress notes indicate Plaintiff reported she was depressed and unmotivated. R. 283-84. In June 2013, she reported that her mood was

better, but she was worried about finances. R. 282. In July 2013, Plaintiff reported that she was saddened by the death of a pet, had not been sleeping well, and did not feel able to consider a part-time job, but that she was walking outside three times a week. R. 282.

In August 2013, Plaintiff reported that she was getting out a little more and Ms. Edgar noted that her mood was better. R. 281. In September 2013, Plaintiff reported that she was anxious after her mother was admitted to the hospital, and that she tried to help out as much as she could, but that she had a hard time getting out of bed and motivating to visit her mother. R. 280. In October 2013, Plaintiff reported a bad week because her mother was readmitted to the hospital, but Ms. Edgar noted that her mood was stable. R. 280. In November 2013, Plaintiff reported that she felt her OCD symptoms were worse, but that she had started exercising which had increased her energy. R. 278. In December 2013, Plaintiff reported that she continued to isolate, and had low energy and motivation, but that she enjoyed doing karaoke at her club. R. 294. In February 2014, Plaintiff reported that her OCD symptoms had worsened and she was checking for wrinkles and signs of aging. R. 293. Ms. Edgar indicated that Plaintiff's increase in symptoms appeared to coincide with her mother's hospitalization. R. 293.

Ms. Edgar completed a check-box medical source statement in December 2013, and indicated that she had been treating Plaintiff for nine months. R. 285. Ms. Edgar indicated that Plaintiff's depression and anxiety would inhibit social interaction, that Plaintiff slept too much and had a lack of energy, and opined that Plaintiff would be absent more than three times a month from work. R. 287. Ms. Edgar also opined that Plaintiff had good mental ability to interact appropriately with the general public; maintain socially appropriate behavior; and to adhere to basic standards of neatness and cleanliness, r. 288, and that she would be able to manage benefits in her own interest. R. 290.

10

3. George Ondis, Ph.D. (state agency expert)

On May 6, 2013, George Ondis, Ph.D., reviewed the records and completed a Psychiatric Review Technique Form (PRTF) and a mental RFC assessment. R. 51-54. Dr. Ondis noted the following from the record before him. Plaintiff had mild restriction in her activities of daily living, and moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, but no episodes of decompensation. R. 51. Regarding Plaintiff's understanding and memory, she had limited ability to understand and remember complex or detailed instructions, but that she would be able to understand and remember simple one to two step instructions; perform simple, routine and repetitive work in a stable environment; and understand, retain, and follow simple job instructions. R. 52. With regard to concentration and persistence, Plaintiff was capable of working within a schedule and at a consistent pace for routine and repetitive work; could make simple decisions when performing routine and repetitive tasks; carry out short and simple instructions; maintain concentration and attention for reasonably extended periods when performing routine and repetitive work; would be able to maintain regular attendance and be punctual within reasonable expectations; would not require special supervision to sustain an ordinary work routine for simple and repetitive tasks; and would be expected to complete a normal week without exacerbation of psychological symptoms when performing routine and repetitive work. R. 53.

In the category social interaction limitations, Dr. Ondis opined that Plaintiff was somewhat socially isolated, but still had the ability to maintain socially appropriate behavior, perform personal care functions, could get along with others in the workplace within reasonable expectations, ask simple questions, and accept instructions and advice. R. 54. Finally, with regard to adaptation, Dr. Ondis opined that Plaintiff was capable of taking appropriate

precautions to avoid workplace hazards, could function in production-oriented jobs that required simple decision making, and sustain an ordinary routine and adapt to changes without special supervision. R. 54.

### c. Vocational Expert Testimony

The VE evaluated the claimant's past relevant work as a babysitter as a semi-skilled position, with a medium exertional level. R. 43. The vocational expert was asked to assume an individual of the same age, education, and work experience as the claimant who is able to perform at all exertional levels. The work would be limited to routine and repetitive tasks performed in a stable work environment where the work place and the work processes remain the same from day to day. The worker would only take instruction and redirection from a supervisor when no immediate responses required of the worker unless clarification is necessary. The pace of the work was determined by the worker. General production demands are met. Based upon this hypothetical, the VE opined that the claimant could perform her past work. She also stated there are additional jobs such as a dishwasher, a dryer attendant and a sorter that would meet these types of limitations. R. 44.

The Administrative Law Judge then asked a second hypothetical wherein the individual be limited to no contact with the public and the work is with things and not people. The VE opined the claimant could not perform the past relevant work; however, could still perform the previous jobs listed. R. 44.

The third hypothetical which the judge presented to the VE was that the individual would miss work more than three times per month, have poor or no ability to do the following: remember work-like procedures, understand very short and simple instruction, carry out very short and simple instructions, maintain attention for two hour segments, maintain regular

attendance and be punctual, and customary and usual tolerance, make simple work related decisions, complete a normal work day and work week without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance or accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting or deal with normal stress. Based upon this hypothetical, the VE testified there would be no jobs the claimant could perform in the national economy. R. 45.

### III. The ALJ's Decision

Following a hearing the ALJ issued her decision in which she found that Plaintiff was not disabled. R. 23. At steps one and two the ALJ ruled in Plaintiff's favor. The ALJ first noted that Plaintiff had not been engaged in any substantial gainful activity since the alleged onset date. R. 16. At step two, the ALJ found that Plaintiff suffered from severe impairments of major depressive disorder, bipolar disorder, and OCD. R. 16.

At step three of the sequential analysis, however, the ALJ found that Plaintiff did not have a medically determinable impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. part 404, Subpart P, Appendix 1. R. 16-18. The ALJ then found that Plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations: (1) routine and repetitive tasks; (2) work performed in a stable environment where the workplace and work process remain generally the same from day-to day; (3) the worker only takes instruction or redirection from the supervisor where no immediate response is required of the worker unless clarification is necessary; (4) the worker determines the pace of the work but general production demands are

met; (5) no contact with the public; and (6) work that is done with things and not people. R. 18-20.

The ALJ determined that Plaintiff was unable to perform her past relevant work as a babysitter (semi-skilled and medium exertion). R.19-20. At step five, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy.[2] Specifically, the VE testified that Plaintiff could perform such jobs as dishwasher (over 450,000 medium occupations exist nationally), dryer attendant (over 140,000 medium occupations exist nationally), and sorter (over 3,000,000 light occupations exist nationally), and, therefore, that she was not disabled under the Act. R. 21-22.

**IV. Discussion**

First, Plaintiff argues that the ALJ's decision was in error because she placed great weight on the "non-treating paper examiner" from the Bureau of Disability Determination and in failing to give the treating source controlling weight. Specifically, Plaintiff notes that a treating physician's opinion cannot be rejected unless the ALJ points to other medical evidence of record. *Fargnoli v. Halter*, 247 F.3d 34 (3d Cir. 2001). Plaintiff argues the ALJ has pointed to the findings of the in house Bureau of Disability Determination psychologist Dr. Ondis to sustain this burden, but at the point in time that this psychologist evaluated Plaintiff's case, on May 6, 2013, he did not have, for review Exhibits 4F, 5F, 6F, 7F, or 8F. R. 272-302. These are a portion of the records from Dr. Last and licensed clinical social worker Margorie Edgar. Without having reviewed the updated Treating Medical Source Statements, psychiatric or therapy records, Plaintiff argues, the ALJ's finding that this opinion should be given great weight lacks foundation.

---

[2] The ALJ noted but rejected the VE's testimony that a person such as Plaintiff could not do any job at a level consistent with substantial gainful activity if she were to be off task due to her rituals. The ALJ found this assertion to be "merely speculative," "lacks merit," and "lacks an evidentiary foundation." R. 22.

14

Our Court of Appeals has instructed:

> [t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. See 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, see, e.g., 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). State agent opinions merit significant consideration as well.

*Chandler*, 667 F.3d at 361. Simply put, "[a] ALJ must explain the weight given to physician opinions." *Id.* at 362. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record. *Becker v. Comm'r of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010).

Moreover, reliance on form reports "in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best" and "where these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). The check box opinions submitted by Dr. Last, to the extent they were unaccompanied by any explanatory narrative were "weak evidence." Even so, the ALJ appropriately determined his medical source statements were only entitled to limited weight: they were contradicted by his contemporaneous examination findings and treatment notes. This is allowed. 20 C.F.R. §§/ 404.1527(c)(2), 416.927(c)(2); *compare* R. 273 (plaintiff had poor memory, sleep disturbance, mood disturbance, obsessions or compulsions, difficulty thinking and concentration) *with* R. 270 (Plaintiff had normal appearance, good grooming, good eye contact, normal speech, fine mood, appropriate and full range of affect, coherent and goal-directed thought process, intact cognition, and no obsessive thoughts, hallucinations or delusion).

15

Other inconsistencies with the record also appear, for example, Plaintiff reported fewer OCD symptoms in May 2011 and that she was stable on her medication, and in November 2012, she reported she was looking for a job. R. 267-69. In addition, Dr. Last's April 2014 medical source statement indicating Plaintiff had poor focus on concentration on clinical examination, R. 296, is contradicted by his mental status examinations revealing normal motor skills, normal appearance, good grooming, good eye contact, normal speech, fine mood appropriate and full range of affect, coherent and goal-directed thought process, intact cognition and no hallucinations, delusions or obsessions. R. 291-91, 301.

Upon a review of Dr. Last's forms, I agree with the ALJ that Dr. Last's responses are inconsistent with his own mental health status examinations. These reasons are appropriate, sufficiently explained and supported by substantial evidence of record. 20 C.F.R. § 404.1527. Therefore I find no error in this regard on the part of the ALJ.

Similarly, the ALJ appropriately relied on the opinion of Dr. Ondis, the state agency physician, despite a time lapse in the record. *See Chandler*, 667 F.3d at 361; 20 C.F.R. §§ 1527(c)(2). It is clear that the ALJ considered the entirety of the mental health evidence, including those records from the period after state agency record review, in assessing Plaintiff's mental RFC and in considering Dr. Ondis' opinon. The objective examination findings from treatment providers were consistent with Dr. Ondis' opinion that she had no more than a "moderate level of impairment" due to her mental health issues and that her impairments could be accommodated by limiting her to unskilled work with other non-exertional limitations set forth in the RFC. Plaintiff has demonstrated improvement with medication and individual therapy. It is clear that the ALJ appropriately considered the entirety of the medical records and formulated an RFC that accounted for all of Plaintiff's credibly established limitations.

16

Plaintiff also argues that The Administrative Law Judge committed reversible error in determining that Plaintiff Miller did not meet or equal a listed impairment. Specifically, the Plaintiff contends the ALJ erred in finding that the claimant's generalized anxiety disorder did not meet or equal Listing 12.06 -Anxiety Related Disorders - in that she experienced generalized persistent anxiety along with recurrent panic attacks, obsessions or convulsions, difficulty thinking and concentrating, poor memory, sleep disturbance, emotional liability, mood disturbance, social withdraw or isolation and decreased energy. R. 272-77. Furthermore, Plaintiff asserts her ability to do work- related activities on a day to day basis were affected by her depression, anxiety, obsessive thoughts and compulsive behaviors.

The requirements for paragraph B in Listing 12.06 read as follows:

B. Resulting in at least two of the following:

    1. *__Marked__* restriction of activities of daily living; or
    2. *__Marked__* difficulties in maintaining social functioning; or
    3. *__Marked__* difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, subpt. P, app. 1 (emphasis added). Listing 12.06, paragraph C requires a "complete inability to function independently outside the area of one's home." 20 C.F.R. § 404, subpt. P, app. 1

At step three, the claimant bears the burden of presenting medical evidence to show that her impairment matches a listing or is equal in severity to a listed impairment. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n. 2 (3d Cir. 2000) (citing *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992)). The Supreme Court has defined this burden:

> For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in

17

> severity in all the criteria for the one most similar listed impairment. A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

*Sullivan v. Zebley*, 493 U.S. 521, 530–32 (1990). Substantial evidence supports the ALJ's determination that Plaintiff's impairments did not, alone or combined, match or equal the relevant Listings. As for activities of daily living, as the ALJ determined, Plaintiff has mild restriction; she is able to adhere to basic standards of neatness and cleanliness, she drives, cooks, cleans and shops. R. 17. As for social functioning, the record evidence shows she has moderate difficulties. She goes to karaoke she has a good interaction with the public and can maintain socially appropriate behavior. As for the criterion of concentration, persistence or pace, the ALJ appropriately found she has moderate difficulties; although she reports problems with depression, anxiety, OCD, panic attacks and impaired concentration, her mental status examinations show an overall ability to concentrate, normal thought processes. Despite her mental health disorders placing some limitations in these areas, she can perform routine and repetitive tasks as provided in the RFP. Finally, she has not experienced episodes of decompensation. She has not been hospitalized for an acute exacerbation of her mental health impairments. She lives with her son and is capable of leaving her home independently and does not require a highly supportive living arrangement. Plaintiff has failed to establish that she has met these requirements and thus, her claim for disability pursuant to a Listing fails.

The ALJ's decision being supported by substantial evidence, the ALJ did not err.

## V. CONCLUSION

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is AFFIRMED. An appropriate order will follow.


Dated: October 27, 2016                    /s/ Robert C. Mitchell
                                           Robert C. Mitchell
                                           United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELLY L. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. 16-640 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

AND NOW, to-wit, this 27th day of October, 2016, it is hereby ORDERED, ADJUDGED and DECREED that Plaintiff's Motion for Summary Judgment [ECF No. 12] is DENIED and Defendant's Motion for Summary Judgment [ECF No 16] is GRANTED. The Decision of the Commissioner is AFFIRMED.

/s/ Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge